Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 803 | **DATE** | 6/8/2000 |
| **CASE TITLE** | | Bolender vs. The Valspar Corp | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 3-1) to dismiss is granted. The Court dismisses Bolender's complaint in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 09 2000 date docketed | 8 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES P. BOLENDER,  )
                     )
        Plaintiff,  )
                     )
vs.  )   00 C 0803
                     )
THE VALSPAR CORPORATION,  )
                     )
        Defendant.  )

DOCKETED
JUN 09 2000

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). For the reasons set forth below, the Court grants Defendant's motion.

### BACKGROUND

Plaintiff James P. Bolender ("Bolender") brought this action against Defendant Valspar Corp. ("Valspar"), alleging breach of contract and violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. (the "IWPCA"). Bolender seeks separation benefits, vacation pay, and wages. The following factual recitation is based on the pleadings.

In 1966, Bolender began employment in the Packaging Coatings Division of Dexter Corp. ("Dexter") located in Waukegan, Illinois, and eventually rose to Senior Account Manager for North America, Canada, and Mexico. On or about February 26, 1999, Dexter consummated a sale of the assets of the Packaging Coatings Division to Valspar. At the same time, Dexter discontinued the operations of its Packaging Coatings Division. As a result, Dexter terminated Bolender's employment in the Packaging Coatings Division on February 26, 1999. On March 1, 1999, Bolender began working for Valspar. That same day, Valspar terminated his employment. On March 2, 1999, Dexter's Adhesives & Coatings Systems Division–Automotive and Specialty Coatings hired Bolender as an Account Manager for the Midwest territory.

At the time of Dexter's asset sale to Valspar on February 26, 1999, Dexter's Packaging Coatings Division had a Separation Pay Program (the "Program") in effect. The Program allegedly provided permanent employees with separation pay benefits in the event of a sale or transfer of Dexter's assets resulting in the discontinuance of operations. In the purchase agreement for Dexter's assets, Valspar purportedly assumed Dexter's responsibility to pay separation benefits under the Program. Nevertheless, Valspar refused to pay Bolender separation pay benefits.

As a result, Bolender brought this action. In Count I, Bolender claims that Valspar's refusal to pay him separation benefits constitutes a breach of the Program contract. In Count II, Bolender alleges that Valspar's refusal to pay him separation benefits under the Program is a violation of the IWPCA. Bolender also seeks wages and vacation pay under the IWPCA in Count II.

In this motion, Valspar argues that the Program is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq. ("ERISA"). Thus, Valspar asserts that Bolender's claims relating to the Program are preempted by ERISA and so, fail to state contract and IWPCA claims. Valspar further argues that without the claims for separation benefits, the remaining claim for wages and vacation pay in Count II alleges an amount in controversy far below the required $75,000 to maintain a diversity action in federal court, and so, must be dismissed for lack of subject matter jurisdiction.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. A defendant must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff

and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993), cert. denied, 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992), cert. denied, 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleading as exhibits are considered part of the pleadings for all purposes. See Fed. R. Civ. P. 10(c). In addition, "documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993).

Rule 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. See In re Chicago, Rock Island & Pacific R.R. Co., 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. See United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996), citing Bowyer v. United States Dep't of Air Force, 875 F.2d 632, 635 (7th Cir. 1989), cert. denied, 493 U.S. 1046, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. See Kontos v. United States Dep't of Labor, 826 F.2d 573, 576 (7th Cir. 1987). When a party moves for dismissal pursuant to Rule 12(b)(1), the nonmoving party must support its allegations with competent proof of jurisdictional facts. See Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942). With these principles in mind, the Court evaluates Defendant's motion.

## DISCUSSION

Valspar maintains that ERISA preempts Bolender's claims relating to the Program because the Program constitutes an employee welfare benefit plan under ERISA. Section 514(a) of ERISA preempts "any and all State laws insofar as they

may now or hereafter relate to any employee benefit plan" within the scope of ERISA. See 29 U.S.C. §1144(a); Dranchak v. Akzo Nobel Inc., 88 F.3d 457, 459 (7th Cir. 1996). Bolender, however, argues that the Program is not an ERISA plan but is merely a contract, and thus, Bolender's state law claims are not preempted. Because Bolender has attached the Program terms to his complaint, the Court may consider it in determining whether or not Bolender has stated claims under state law. Because the terms of the Program effectively plead an ERISA employee welfare benefit plan, Bolender's state law claims are preempted by ERISA.

ERISA defines an employee welfare benefit plan as "any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. §1002(1). The Seventh Circuit has understood "plan" under ERISA to require an ongoing administrative scheme and reasonably ascertainable terms. See Cvelbar v. CBI Illinois Inc., 106 F.3d 1368, 1374 (7th Cir. 1997), citing Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12, 107 S.Ct. 2211, 2217-18, 96 L.Ed.2d 1 (1987), and Diak v. Dwyer, Costello & Knox, P.C., 33 F.3d 809, 812 (7th Cir. 1994). Because the Program sets out an ongoing administrative scheme and reasonably ascertainable terms, it is a "plan" under ERISA.

In Fort Halifax, the United States Supreme Court found that a one-time lump-sum payment triggered by a single event required no administrative scheme to meet the employer's obligation. See Fort Halifax, 482 U.S. at 12, 107 S.Ct. at 2218. Although the Supreme Court weighed heavily the lump-sum nature of the payment in the particular circumstances presented by Fort Halifax, the nature of the payments are only one of many factors to be considered and is not alone determinative. See Champagne v. Revco D.S., Inc., 997 F. Supp. 220, 223 (D.R.I. 1998). The difference between situations such as the one addressed by the Supreme Court in Fort Halifax and those that are properly characterized as plans under ERISA is necessarily a "matter of degrees but under Fort Halifax degrees are crucial." Cvelbar, 106 F.3d at 1375, quoting Simas v. Quaker Fabric Corp., 6 F.3d 849, 853 (1st Cir. 1993).

In the instant case, the Program's benefits are not limited to a separation pay benefit, but also includes continuing medical and dental coverage and outplacement assistance. Although the separation pay benefit is to be made in one payment, an administrative scheme arises from the employer's need to analyze each employee's particular circumstance in light of the appropriate criteria in order to determine the employee's eligibility for and level of benefits. See Cvelbar, 106 F.3d at 1375, citing Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 257 (8th Cir. 1994). "Whether the employer's undertaking or obligation requires managerial discretion in

its administration" is a factor in determining "which obligations are complex enough to require" an ongoing administrative program. See Cvelbar, 106 F.3d at 137 (citations omitted). Here, rather than requiring simple or mechanical determinations, the Program necessitates a case by case review of each employee in order to determine benefits. Initially, the Program requires a determination of the reason for termination for each employee. Cf. id. at 1377. Separation pay benefits are triggered under the Program by certain types of termination, including discontinuance of operations as in this case. However, if the employee voluntarily resigns, is terminated for cause, or voluntarily retires due to death or disability, separation benefits are not available. Also, under the Program, the separation pay benefit amount and period varies for employees depending on years of service and employment level. Thus, the Program requires a determination of an employee's continuous full years of service in order to calculate the separation pay benefit amount and period. Because an employee receives varying additional separation pay benefits and additional weeks of insurance coverage for occupying professional, management, or director positions at the time of separation, the employer must determine whether the position last occupied by the employee qualifies as one of these positions and which one of these positions it qualifies as. Thus, calculation of the separation pay

benefit requires more than simple arithmetical computations; it requires the exercise of managerial discretion. Cf. id. at 1377.

In addition, the Program provides for continuing medical and dental coverage during the separation pay period, which requires the employer to make administrative determinations about coverage and eligibility during the separation period. Cf. id. at 1377-78; Champagne, 997 F. Supp. at 223-24. The employee may elect to continue their medical and dental coverage during the separation pay period, and the employer pays either the employer portion of the premiums, or in case of discontinuance of operations pays both the employer and employee portion of the premiums. The employer ceases all other insurance but gives the employee the option of converting his life insurance. The employer must monitor the employee to determine whether the employee secures other employment during the separation pay period because if that occurs, medical and dental insurance will continue only through the end of the month in which the new employment begins. However, the employer gives the employee an option of requesting one additional month's insurance coverage should the new employer require a waiting period before new medical and dental coverage begins. These continuing insurance benefits and options under the Program require administrative involvement from the employer. As such, the Program is different than

the one in Fort Halifax and sets out terms that require an on going administrative scheme.

In addition, the Program's sets out terms that are reasonably ascertainable. The Seventh Circuit has found that:

> In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. Diak, 33 F.3d at 812, quoting Donovan v. Dillingham, 688 F.2d 1367, 1372 (11th Cir. 1982).

A reasonable person could easily ascertain the benefits and beneficiaries of the Program. The beneficiaries are "all permanent employees of Packaging Coatings' domestic facilities in Birmingham, AL, Hayward, CA, and Waukegan, IL, except those otherwise covered by a collective bargaining agreement." The benefits are a one time separation pay benefit, continued medical and dental insurance, and outplacement services. Cf. Cvelbar, 106 F.3d at 1378. Moreover, the procedures for receiving benefits are reasonably clear. The Program terms state that for employees to become eligible, the employees would have to be terminated due to reduction in force or discontinuance of operations. Employees then would receive separation pay benefits, according to the Program terms, and be able to continue medical and dental coverage. Cf. id. Finally, Bolender argues that the source of financing is lacking. However, a

reasonable reading of the Program leads to the inference that the separation benefits would be paid out of the employer's general funds. Cf. id. "Payment of benefits out of general funds satisfies the requirement of an ascertainable source of funding." Diak, 33 F.3d at 813 ("it is equally true that an employer's failure to meet an ERISA requirement does not exempt the plan from ERISA coverage"). As such, the Program sets out terms that are reasonably ascertainable.

Since Bolender's claims for separation pay benefits is based entirely on Valspar's alleged refusal to act in accordance with the Program terms, his claims relate to the Program. See Panaras v. Liquid Carbonic Industries Corp., 74 F.3d 786, 795 (7th Cir. 1996) (complete preemption of state law claims required where state law claim cannot be resolved without interpretation of contract governed by federal law). Because the Program is a "plan" under ERISA, Bolender's breach of contract and IWPCA claims for separation pay benefits are preempted by ERISA. As such, Bolender has failed to properly allege a state law breach of contract claim and IWPCA claim for separation pay benefits.

Moreover, because Bolender's remaining Count II claim for wages and vacation pay under the IWPCA fails to meet the amount in controversy requirement for diversity actions in federal court, the Court dismisses it for lack of jurisdiction.

## CONCLUSION

For the reasons set forth above, the Court dismisses Bolender's complaint in its entirety.

_____
Charles P. Kocoras
United States District Court Judge

Dated: June 8, 2000